Good morning, Illinois Appellate Court. First District Court is now in session. The Fourth Division, the Honorable Justice Jesse G. Reyes presiding. Case number 21-0574, People v. Richard Mustonen. Thank you, Mr. Schaffer. Good morning, ladies and gentlemen. With counsels who are going to be arguing this matter today, please identify yourselves for the record and the party that you're representing. Good morning, Your Honors. My name is David Harris on behalf of the appellant, Richard Mustonen. Okay. Morning, Your Honors. Good morning, Counsel. Assistant State's Attorney Julie Rixey on behalf of the people. All right. Okay, so 15 minutes apiece. Appellant, do you want some time for rebuttal? Yes, please. I would like maybe three minutes for rebuttal. Three minutes? Okay. All right. You may proceed. Thank you and good morning again, Your Honors, and may it please the court and counsel. Richard Mustonen is serving a 55-year sentence based on the testimony of four liars. Four liars, and he's likely to die in prison. These liars were all involved in the offense. Their involvement was the basis of defense counsel's strategy below, arguing to the jury that these witnesses lacked credibility due to their connection to the crime and the motivation to minimize their involvement. There's a pattern jury instruction made just for this defense strategy, IPI 3.17, called the accomplice witness instruction. Inexplicably, counsel did not tender this instruction. With this instruction, the jurors would have been told that it is their legal duty to carefully examine the testimony in this case with caution and suspicion. Caution and suspicion, not just as a matter of defense counsel's urging, but as their sworn duty to follow the law as instructed by the judge. Counsel, if I could just interrupt you for a second. So you started your oral arguments as trial counsel did at the circuit court by calling all of the witnesses, with the exception of police officers and so forth, liars. And throughout, from opening all the way to closing, counsel made it quite clear that the individuals who were testifying were liars, quite specifically called them liars. So with those comments throughout the trial, why is it necessary to have the instruction since the jurors are already become aware, even the state called them liars, right? So why is it necessary that you have to have this instruction since just by the comments that the counsel's made in this trial, the jury's already put on notice and already, you know, cautioned us, you know, the credibility of these, these individuals. Right. Well, this instruction exists for a reason, and it's because people who are involved in the offense are inherently more suspect and less credible than other witnesses due to general bias or any other interest. And counsel has a duty to seek instructions that go with the defense strategy, and there was this instruction directly on point. In some of the cases I've cited in the briefs, Zambrano talked about how defense counsel argued that these were liars and they were biased, and that didn't blunt the need for this instruction. It actually reinforced the need for this instruction because it would be, it would tell the jury that it's their sworn duty. They're sworn to follow the law, and now they're told the law says, not just defense counsel says or the attorneys are saying in argument, which they're told is not evidence and is not the law. They're told that the law says these witnesses are inherently suspect and they should treat them with caution. So counsel's failure to ask for this instruction that perfectly fit the defense strategy is inexplicable. It was a major blunder that deprived Mustanin of the effective assistance of counsel. This mistake prejudiced him. The accomplished witness instruction did more than merely, or the accomplished witnesses, the witnesses did more than merely tip the balance in the state's favor, as was all that was needed in the case cited in the reply brief The state could likely not even secure conviction without accomplished testimony. In this case, but that's not even required. But if we can go through these witnesses Daniel Aguilar obviously was involved and he's pleaded guilty to this offense. He was an accomplice. Andrew Smato was the driver. He drove the offenders to the site of the incident, drove away, came back and gave them a ride later stayed in touch with them. And he was given use immunity, based on a risk of incriminating himself in this case. And Daniel Aguilar even testified that the plan that they had devised for this robbery was for Smato to take off as soon as they got the drugs, indicating awareness of this plan. He's the driver, he's supposed to leave. Amy Clancy, also an accomplice in this case, she knew that the drugs they bought during the first purchase was light, they didn't get enough. Her phone was used to text Montoya to set up this robbery. Daniel Aguilar said she was one of the two people that was sending texts. She took the drugs from Montoya during this robbery. She was arrested. She lied, was interrogated for a couple of days. The police obviously thought they had probable cause to arrest her for this and hold her, and probable cause is all that's required. She also testified that yes, they were taking the cocaine. This was a robbery. The state, before trial, thought she might need to be warned of her Fifth Amendment rights. And on appeal, the state, in its brief, said she knew this was a robbery when they wrote that some of her acts indicated an unwillingness to go along with the plan, that the state's arguing that she was aware of this planned robbery that she attached herself to. So why do you think Emilio Aguilar is an accomplice for the purposes of the instruction? Because all the factors for accountability by common design are present here. He attached himself to a group with a design to commit robbery. He was present for it and present for the flight. He didn't report it. He maintained a close affiliation with the offender, Daniel Aguilar, afterward. When he spoke with the police, he lied and tried to conceal his and his brother's participation. And the state also thought he should be warned. And whether that's enough to convict him at trial isn't the question. I think it could be. I think, you know, one question this court can ask itself is whether it would reverse a conviction because no rational trial could find him guilty if Emilio was convicted. But that's not even that's even a higher standard because all that is needed for this instruction is probable cause to believe someone is involved. And I mean, he's his participation is similar to the defendant in Zambrano who went with the offender, went into an apartment building in Zambrano. The witness actually stayed back on the landing while the offender went up to the third floor and carried out a shooting. And then he fled with the fled with the offender. And I believe in Zambrano he even went to the police the next day, which is more than Emilio did. And the court still found that the witness in Zambrano was an accomplice, sufficiently an accomplice to require this instruction and to require counsel to request this instruction. Excuse me again but another question is, so if the instruction was provided and was given to the jury, would it have specified who the accomplices were? No, I do not believe it would. There's nothing in the instruction that says to indicate a name, no bracketed language to insert names, nothing in the committee notes say to insert names. If the parties had hashed it out below and asked for some for non-IPI version, I think it would still apply to all four witnesses. But it would be up to the jury to decide how to apply this instruction based on the language in the instruction and the lack of committee comments saying that it should be, it should name witnesses. Also, if you know, I think some of the arguments in the briefs about Emilio or say, well, he didn't really know what was happening. But that's based on his testimony and a suspect doesn't get to explain their side of the story before the police determine whether there's probable cause. Except in maybe some high profile cases, a suspect or a defendant does not get to go before a grand jury and explain their side of the story before the grand jury determines whether there's sufficient evidence to issue an indictment. And that's all that's needed probable cause or the possibility of being charged. And there's plenty of facts where if the police's side, the state's side and the prosecutor's side went before a grand jury, an indictment could be returned on Emilio and it would be up to him at trial to say, I didn't know this was the plan. I was just going along for a ride. That story doesn't hold up all that well, either. He and Aguilar and his brother Daniel Aguilar and Amy Clancy, they contradicted themselves several times which also shows possibility for prejudice in this case. Daniel Aguilar testified that when they bought the drugs the first time and they went back and they were using cocaine and decided that they were ripped off and wanted to hatch this plan to commit a robbery. It wasn't Emilio, it was some other brother, Hondo, who was with him. But then when they get in the car to go get more, it was Emilio. Amy Clancy, on the other hand, said Emilio was with them during the first trip to buy the drugs, and so did Andrew Smato. And then Clancy testified that he was using drugs with him. It was Emilio, not this other brother, Hondo. So it looks like Aguilar might be trying to keep his brother out of this just as Emilio tried to keep himself out of it when he lied to police. There are other inconsistencies in their testimony. During this first trip, like I said, two of them said Emilio came with them, but Daniel Aguilar said it was a different brother. But they also contradicted themselves on whether they walked to a liquor store and were picked up from there. Daniel Aguilar, trying to keep his brother out of it, said Hondo came with us to the liquor store. But when we got picked up by Smato to go buy drugs, suddenly it was the other brother. Sorry, he said Emilio went with them to the liquor store, and that's where they got money. They called for Andrew Smato to pick them up. And when he was picked up, suddenly it's now his other brother, Hondo, who's in the car with him to go buy drugs during the first time. Emilio testified that he didn't know his brother next to him was wearing a mask, didn't hear him yell go and pick the driver's seat. So there were a lot of contradictions in their testimony. Amy Clancy was the only one who said when she got the drugs during the second incident that led to the shooting, she passed them back to my client. The other witnesses didn't say that. And they contradicted themselves on when this plot was hatched. Amy Clancy said that the defendants, Mustan and Aguilar, Daniel Aguilar and Emilio were all outside and she wasn't present when they hatched this plot to commit a robbery, then they called her out to go with them. But Daniel Aguilar said no, they were doing the cocaine together and decided it was light. He was doing the cocaine with Hondo, not Emilio. But then it was Emilio who came with them for the robbery. So these contradictions show the weakness of the evidence and they also show the potential for involvement, probable cause to believe all of them were involved in this common design to carry out this robbery, this drug robbery of a drug dealer that led to the shooting, which would make them all accountable. So the overwhelming weight of evidence, if not all the evidence, came from accomplices. They all conflicted with one another on various points of the story. And as in the cases in the brief, Zambrano, Wheeler and Coleman, counsel was ineffective for not tendering the accomplice witness instruction. This court should reverse and remand for a new trial as in those cases. And if there are no further questions, I would reserve any time remaining for rebuttal. Any questions from the panel? No questions. No, thank you. Okay, thank you, counsel. All right, State. Thank you, Your Honors. May it please the court. Your Honors, the ultimate question here is whether trial counsel's failure to ask for the instruction prejudice the defendant. And what that really means is, can the defendant show that a reasonable probability exists that if the jury had in fact received that accomplice witness instruction, the result of the trial would have been different. That's really where the crux of this argument is. And the burden is on the defendant to affirmatively prove prejudice in an ineffective assistance of counsel claim, and he has not met that burden. In determining whether the instruction would have resulted in a different outcome here, the court looks at the totality of the evidence before the jury. Everything that happened in the trial, the examinations, cross-examinations, remarks to the jury, the other instructions given, in addition to the strength of the evidence apart from the accomplice testimony. And that's how the court can determine whether the omission of this instruction was so critical that the defendant was in fact denied a fair trial. And as Your Honor already pointed out here, even without the instruction, the jury was made acutely aware from the beginning of this trial to the end, that the credibility of the state's witnesses was at issue. The jury was repeatedly warned from both sides that the jury should take these witnesses and carefully examine their testimony for biases, inconsistencies, and motivations. Therefore, this additional instruction to view an accomplice with suspicion or caution would not have changed the outcome of the case. Turning to the totality of the evidence here. Before we move to the totality, but counsel is arguing that even though throughout the trial everybody's calling these witnesses liars, that wasn't sufficient, that the jury needed to be instructed in order to follow the law and to make a determination. Do I have a response for that? Certainly. So I think what's important here is what the courts say that the purpose of this instruction is. The purpose of this instruction is to warn the jury that a witness might have a strong motivation to provide false testimony for the state in exchange for immunity or some other lenient treatment. Even if your honors disagree and decide that Amy and Andrew are in fact accomplices in this witness. We still have to ask what would the effect have been on their testimony, would it have been strong enough that it would have changed the outcome in this case, and looking at the witnesses all four of them first looking at Daniel, the instruction would have told the jury to question Daniel's motives for testifying against the defendant. However, importantly, Daniel already pled guilty. And this was not to reduce charge this there was nothing in the record to indicate that he received any kind of deal or an exchange for testimony therefore his motivation for providing false testimony against the defendant was non existent and similarly Emilio and Amy, whether we debate the facts of whether they're an accomplice or not they were not charged in this matter they were not testifying pursuant to an agreement for leniency. So they're also, they, there's no motivation for them to lie against the defendant. So, well, excuse me for example, in Daniel's case wasn't his brother younger brother Emilio still involved in this case, and Daniel already put out but what about to be some sort of shared criminal intent and some sort of intent to further the purpose of this crime. And in our brief we laid out Emilio's at home around midnight, and his brother asked him to take a ride he doesn't know Andrew's motto and I know council mentioned some inconsistencies and the brothers, you know, there's a footnote dropped in our brief that Daniel did have four different brothers, and Amy Clancy didn't know any of them. Andrew's motto didn't know any of them so there there is the possibility that there was just an error and which brother got into the car. But in this case when you look at Emilio's involvement. He, there's no testimony he knew of the plan he didn't know that there was a gun in the car. He didn't know the driver, and he testified he wasn't involved in taking drugs or the previous drug purchase. Therefore, there's no indication he knew that they were going back because they felt shorted. So, the Emilio was not an accomplice in this case and therefore his testimony is not affected whatsoever about whether or not this instruction was before the jury. And, you know, even if, even if you if the court finds that Amy and Andrew were accountable. This instruction is really meant to just put the jury on notice of their possibility that they're getting untruthful testimony and as I just mentioned, they're not. They're not, they're not testifying in exchange for leniency the cases counsel sites Campbell's and Rana and Wheeler, those are cases where accomplices, especially in Campbell, the two the only two witnesses against the defendant were the two people that were charged in the same crime with. And so in those matters those are cases where the accomplices received immunity, and then testified against the defendant, and they were the only witnesses that could identify the defendants in those matters as participating in the crime some of those cases did have some other corroborating evidence, but here similarly, even if this court were to say that you disagree with our position on Andrew and Amy Emilio was an eyewitness, and, and also your instruction doesn't say if someone is an accomplice you must disregard their testimony entirely. What the instruction says is, what would the effect have been on their testimony if the jury had known to look at them with suspicion. So we don't just discount all their testimony and say, Okay, the only thing left is the testimony of Emilio, but it's all still part of the totality the evidence. And so here you have consistent testimony and the material issues in this case. No one is saying, someone else had a gun. No one is saying someone else came off the street and shot. Mr Montoya. This is a case where are there minor inconsistencies. Sure, there are in most cases but here they're all consistent, where the defendant is seated in the car that's corroborated by the DNA swab or he's the only individual that is not. It's not an exact DNA match but but he's the only individual that can't be excluded. It's corroborated by the cell phone records, where it's laid out right there, and the text messages, when they went earlier, when they went later, and why they went in the timing is consistent with the matters in this case you have any describing the finding of a shell casing in the back of the car and you have Daniel testifying to the type of what weapon that would have that shell casing. And you also have the evidence of the postmortem evidence indicating that the victim in this case was standing exactly where the three The court does not need to exclude these other people, even if you do consider them accomplices. The question is, would it have changed the outcome in the case where there have been a reasonable probability that the jury have would have made a different decision had they just known to view one, two, or three witnesses with suspicion, and that's why the court also says you must look at other things, the other jury instructions the court got that they were the believability of the witnesses, they had to look at the weight of the statement. And then you also have to add in, as your honor pointed out this repeated assertions throughout the trial that these witnesses were not necessarily truthful at some point during either their interviews with the police or their trial testimony. Even the state cross examine their own witnesses saying you lied here you lied multiple times and Mr. Aguilar's case you like so many times you don't didn't know up from down so that's why the totality is important here. It's all of this together and the ultimate question is, can the defense show that there was a reasonable probability that had the instruction been given had they been told that these couple of witnesses needed this extra scrutiny, but the result would have been different. And we don't think it would have your honors we think that this in this matter there's no reasonable probability that the result could have been different, the jury was warned in depth, and the evidence, apart from the accomplices. However, your honors decide who was or wasn't accomplices was strong and Emilio his testimony and it was corroborated by the other three witnesses in this case. So, therefore, your honors we ask that defendants ineffective ineffective assistance of counsel claim be denied and we asked the defendants conviction be affirmed. I have a question about Andrew us model. If he's not an accomplice. Why was it necessary to give him immunity. Your Honor admittedly that when a witness is given immunity would certainly indicate to the court that there was some accountability there in this particular case, it's a little more nuanced the on the record the state says that they're giving this immunity due to mental challenges now admittedly there's not a whole lot in the record about the extent of those mental challenges. But when the you combine that statement with the testimony and of his actual involvement that night. It's unclear whether or not he exactly knew what was going on when he when he got into that car. We have admitted he drove there, he drove home and in fact he went back and picked up the defendant, later on in the night. So, in this particular case, there was an expression that there was concern from his family and concern due to his mental incapacities at trial so that's the extent of what we know about, you know, Andrew and he was the driver. However, when you're talking about was he accountable there has to be some level in there and that he has knowledge that what he's doing is helping to further this, this crime. Right, because the record is really not clear on this issue but it appears that there was an agreement by both sides that he was going to get immunity Is that correct. So a review of the transcript there was a pre trial hearing, and the state indicated that model, Mr motto was going to receive immunity and that's where the on the record it was stated the indications due to his family's concern and mental challenges. I believe what Council was referring to related to any clancy and to Emilio the Defense Council at trial. Asked the question of the state, essentially, are there going to be other witnesses that are receiving immunity and the response, my reading of the transcript is the assistant state's attorney is responding regarding any fancy and admittedly the state's I don't read anything in that transcript where he is, he, he is referring to anything to do with Emilio Aguilar, it's the defense attorney who brings up Emilio, and the state's attorney indicates, we're not charging those witnesses and the court acknowledges that they're not charging that and then the court says the rest can be resolved at trial. Does that answer your, your question your honor. Okay, yes. Yeah. And then one further question with regards to the issue of prejudice. Does the McCallister McCallister case sorry. Have any applicability here. It does your honor I mean it's McAllister obviously the facts were different. The main fact that was different in McAllister was that the defendant actually testified. And so the court there got to look at the defendants testimony when looking at the totality of the evidence but essentially the court was looking at what effect would this instruction have been the, the other witness in this case this was a homicide of three indicated that there was no reason there was no self defense when the co defendant had shot the three victims, the defendant testified that he did it in self defense, and he testified that the witness had also shot the victim so when the court was was sort of setting forth these factors. The main thing that they were looking at what there were three main things things they were looking at was sort of the initial the lack reliability and the defendant statement compared to what the witness was saying, and they were ultimately got to look at these other factors before we can decide whether or not the outcome would have been different. So, in that matter that they did find that the, they said basically that if the instruction had been given, it would have done nothing to cure the inherent weaknesses and the defendants testimony, and nothing to increase the likelihood of the acceptance by the jury, and it would have had no effect on the jury's assessments of the witnesses so that was sort of the holding there and if you apply that to this case, it's, it's the same. We're asking if this instruction would have been given, would it have affected the jury's decision to the extent that this would have resulted in a different outcome, and given the totality of everything that I've be affirmed. Any questions from the panel. If I may follow up on the McAllister case. In subsequent cases, the courts referred to the McAllister factors. And one of the factors is to consider the evidence, apart from the accomplice testimony. Today, you seem to indicate that we can still look at evidence from witnesses that are found to be accomplices. Should we, should we find that Amy and Andrew were accomplices. Is that is your argument consistent with that McAllister factor. I believe so your honor because the McAllister test says the strength of the evidence outside of the accomplice witness. So, the way that that the case has been interpreted as I mentioned is not to discount everything everybody else said that's an accomplice, but what how strong was the evidence if you put the accomplice testimony to the side for a second how strong was all the other evidence so the cases I cited in particular hunt and prester, that's exactly what happened in this case, where the compass was you don't read the cases saying you can't look at anybody else's testimony it's saying how strong was everything else. If we just if this evidence was somehow tainted by the fact they weren't told to be looked at with suspicion and caution. How strong was everything else. And here, you've got an eyewitness sitting next to the defendant who sees him shoot him. This is, this is not a miss ID, this is not a questionable lineup. This is an eyewitness sitting next to the shooter. So, very strong evidence, and then you can add back in the totality of all the other evidence, even if you were to think, even if you were to find that Amy, Daniel and, excuse me, Andrew, Andrew were all somehow tainted by the lack of this instruction, then the question is, was that enough to actually create a reasonable probability that the result would have been different. Thank you. Any other questions for the panel. No question. No question. Okay. Thank you, Council. All right, rebuttal. Yes, thank you. I'd first remind this court that a reasonable probability of a different outcome is even lower than a preponderance of the evidence standard under Strickland. And, you know, the council talked about the totality of the evidence and I think Justice Rocheford your question was aimed at this also that this is the totality of the evidence council just argued was accomplices corroborating accomplices. The jury should be told that the law views them as suspect, not just counsel, but the law council talked about the cases, Campbell and Wheeler, having no other evidence outside and some brown or no evidence aside from accomplices and that's not quite correct and I guess Council acknowledge some corroborating testimony but in Wheeler, there was a testimony not just from the accomplice, but the defendant confessed to a cellmate, and that confession came in. And there was a witness who corroborated events from a distance, but could not identify the defendant, and that was further corroboration much more than we have in this case. In Campbell there was testimony from two accomplices and one non accomplice, and that court still found ineffective assistance and prejudice. And the general jury instruction about witness credibility 1.02 and bias and motive does not render this harmless, either, because that instruction 1.02 says it's for the jury to determine witness credibility to determine if bias exists, or motive 3.17 tells the jury that it already has been determined as a matter of law that these witnesses are less credible than normal. So this different this instruction goes far beyond counsel's arguments goes far beyond 1.02 and nearly leaving it up to the jury and tells them the law as instructed by the court says that these witnesses are set are suspicious. Council mentioned Daniel Aguilar pleaded guilty and said no deal had been reached and he had no reason at then or at trial to minimize but he got the minimum sentence without the firearm enhancement for which accountability applies as this court is aware of the 15 year enhancement can apply by accountability and he did not get that firearm enhancement in a shooting death. So he got some benefit in his plea deal. And, you know, Campbell involved. One of the one of the accomplices and Campbell and pleaded guilty and the court still found error for not requesting an accomplice witness instruction, and the Supreme Court just last December and people versus Fane F A and he held that the accomplice witness instruction is proper, even where defendant has already pleaded guilty. That wasn't the precise issue. The issue in that case was whether it should be given when it's a witness who testifies for the defense and the state wants the instruction, but that defendant had pleaded guilty and the court explained that it's not just about bias to curry favor from the state but that these confessed criminals involved in the offense that is on trial are inherently suspect and it's proper to warn the jury about that as a matter of law. Andrews motto, the mental incapacity whatever it is wasn't explained in the record his testimony doesn't indicate any difficulty and following questions are giving coherent answers. And, you know, the judge signed an order granting at the prosecutor's request that says he's granted immunity based on Fifth Amendment privilege against self incrimination. I think that is pretty clear that is accomplished aside from the facts of him driving being present when they're doing drugs, catching the plan driving him to defense driving away and not distancing himself from the defendants but coming back and giving him a ride later. Those are all factors that lead at least a probable cause which is all that's needed. Same with Emilio that he just was sitting there along for the ride knew nothing is his testimony. He doesn't get to explain away probable cause he doesn't get to tell the grand jury don't charge me because I have an affirmative defense or I have a lack of knowledge. What's required is facts for probable cause, and for your counsel talked about a shared intent that's only one prong of accountability. The other is a common criminal design. Here, there was a common criminal design to rob the decision to cocaine. He attached himself to this group, that's one factor with the design to commit robbery, he was present for it is another factor he was present for the flight, that's another factor. He didn't report the crime, that's another factor. And he maintained a close affiliation with the defendant Daniel Aguilar after that's another factor. And then he lied to the police yet another factor, all these are the general factors involved in any common criminal design case where you don't necessarily show the and carried out a shooting, and that's a bronze and Bruno accomplice witness even went to the police the next day to tell his story, whereas Emilio did not, and waited till he was brought in and lied to the police. All of these witnesses were accomplices, even if not all the inconsistencies I mentioned earlier, and below, show that Emilio alone would possibly maybe be sufficient I don't this court can again reflect on whether it would find a rational trial could find. Well, earlier I said a rational track and find some Emilio guilty but could also reflect on whether Emilio testimony alone is overwhelming to blunt this error or there's a preponderance, less than a preponderance of the evidence, showing that had counsel made sure the jury was told that not just counsel's plea in closing but the law is settled. Witnesses are not to be trusted. If that would change the outcome, even if Emilio was the one witness who might not be considered an accomplice which again I'm not conceding because he fits every factor listed every factor that is used for common criminal design accountability, but even then, is that enough to blunt the impact of counsel's major mistake of not asking for the exact Taylor made instruction that perfectly fit to defense theory. So, the answer is no. And my client should get a new trial, where counsel properly instructs seeks instruction on this perfectly applicable defense theory, based on IPI 3.17. Thank you. Any questions from the panel. No, no. Okay. All right. We want to thank councils for a very interesting case and well argued manner score will take it under advisement and be rendering a decision shortly. Court is now adjourned.